Judge Nelson, Judge Brunetti, and Judge Silverman, and I'm Stephen Yagman. I represent the plaintiffs, and I do that again because any of this paper, these arguments, they may have to listen to. They might get lost if they don't know who's standing, who the judges are. I think the issue with respect to Flico comes down to the issue of whether or not loss of employment or employment opportunities constitutes an injury to business or property. Our position is that it does in some cases support that, that the Oscar case no longer has any validity, even if it were to have said that. I don't know what this panel is going to do with the statement of Jay that was submitted concerning the Hunter case. Now, I wouldn't have submitted it. I could have. I was tempted to because there's a statement in the Hunter case that says, thereby removing him from the workforce, explaining when Mr. Hunter should have known that he had incurred an injury, and then saying, based on his having been removed from the workforce, which is the operative time at which he should have known that he had an injury, therefore his claim is barred. So I don't know what to do with that because I can't cite this to this Court. We can't consider it either. And it's not binding. In other words, to me, I mean, there are some members of the Court that get a lot more excited about citation of unpublished dispositions than I do, but to me it was legitimate in that it was a related case and it keeps us current with the history of the related cases, but it does not guide our analysis. So, as far as I'm concerned, you can forget about it because that's what I'm going to do. Very well. My argument is just what I said. If Judge Silverman or anyone else has any questions, I'll be happy to address them. I've said everything I possibly could have said about Rico in the brief. In fact, which case abrogates Oscar? Now versus Scheidler. The first decision, now versus Scheidler. One, and I don't want to just say you don't have to have an economic motive. Isn't that the holding of now? I don't read it exactly like that. I read it the way it's set forth in the brief. I think there's a little bit more to it than that when one gets away from the head note, but I accept, obviously, your interpretation of that case because I don't get to decide what that case is. But let me go to Oscar. Oscar has nothing to do with anything like what happened in this case. Oscar, as I recall, had some people claiming about the diminution in the value of their leasehold because somebody was doing nasty stuff next door. This doesn't fit. It's a wacky case. It's really out of the ballpark. I can't imagine who would have brought that case because the connection was so tenuous. In this case, you have something completely different. In this case, you have a person who says, I've been damaged in my business or property because of loss of employment or employment opportunities. Well, business or property, in Oscar, there was, as you know, a little difference of opinion on what property is when it comes to a leasehold interest. And all we were concerned about is how the word property as defined in the RICO statute applies to that situation. Same as your case here. How does the word property apply? And the cases seem to be alleging that your position really isn't the strongest position when it comes to the losses, if they're personal injury losses. And catch me if I'm wrong. And so what you're projecting is what he would lose in the future, his property interest in the future, because the cases seem to say what he lost today as personal injury wages and whatever are not covered under RICO. There are two phrases there, business or property. Business or property. And your folks on property, obviously somebody's business, if they're a worker, is what they do for a living. Either way, the case law seems to be not supporting those losses if they're characterized as personal injuries. That's absolutely correct. We're not claiming personal injury here. A person can arbitrarily characterize these things any way that person chooses to do so. And people who are on one side of this say it's all personal injury and that there's economic harm. People on the other side, on my side, say if it's loss of employment, it's loss of business, it's loss of property. I don't get to characterize this here. You all get to characterize it, and you may characterize it as personal injury. I can't prevent that. I hear that, but do you have any authority for it? I was looking for some authority to support your position. Do you have any authority directly on time to support your position? The cases that I have are all cited in our brief. I can't remember all of their names. I remember the name of the Evans case that's cited in our brief, and there are a number of other cases. But I don't remember that it had exactly the same factual circumstances as yours. Neither does Oscar have exactly the same factual circumstances. Yeah, but Oscar is a leasehold interest. We're talking about the specificity when someone says, I've lost my job because I was put in a can and I couldn't get out to do my job, and I lost my wages. That's a pretty simple situation. The case that I recall is one that then Chief Judge Jack Weinstein of the Eastern District of New York in Brooklyn decided. It's cited in the brief. I can't think of the name of it off the top of my head. There are a number of cases. I think we cited six cases on the bottom of one page in the brief, and you've got the briefs as well as me, that stand for that proposition that economic harm can be characterized or can be comprised by loss of employment. Well, I think that's a given. I think, for example, if you let's take a person who owns a trucking company and and harm is visited on that person and he loses his trucking company. Now, that's a that's an economic harm, obviously, to him. Injury to business. But if you visit harm on one of his truck drivers has nothing to do with that business. He said driving a truck is that truck driver's loss of employment, loss of a business injury to his business. Can you equate his employer and him as far as a business is concerned? I don't think it works on the analogy you just gave. I agree with that analogy. But I think that in this case, the plaintiff is in a situation of a person who owns the trucking business and is losing his employment by removing it to an employee of the person who owns the business. I think the analogy breaks down. But isn't isn't the pleading here that he he didn't own a business. He was employed doing something. Now, isn't that where we are? Depends on what your view of economics is. No, no. But isn't that the situation? This guy did not own a business. Correct. He was employed by somebody else in that business. Correct. But I think that's a distinction that shouldn't make any difference in this case, because I don't think you should distinguish between people who, on the one hand, are in a good enough situation to own a business for employees. I respect your feelings. However, we have to go by the legislative intent of the RICO statute. And as I read the cases, the RICO statute was not intended to give those kind of trouble damages for persons who lost their job because they equated those more to personal injury rather than business loss. So whether we like it or not, we have to deal with what the authority with what the legislative intent was with this statutory remedies. I respectfully disagree with respect to the legislative intent, but I'd like to reserve my two minutes that I have left for coming back with rebuttal, if I may. All right. Thank you. Mr. Yagman knows he has a statute of limitations problem, and therefore, he's trying to sue under RICO because it has a four-year statute of limitations. And that's what this comes down to. Well, even so, if he has a RICO claim, he's got a RICO claim. Excuse me? If he's got a RICO claim, he has a RICO claim. He doesn't. He doesn't. Well, tell us why. He's trying to dress up this 1983 lawsuit in RICO clothes, and the clothes don't fit, and he's done no better job of tailoring them today. I would like to set the record straight on the 28J. I cited it to the court, and I looked at the court rules first because I know Mr. Yagman knows court rules very well. I cited it legitimately as a related case. I felt we had to bring it to the court's attention. Mr. Yagman identified it as a related case, and that is why I brought it to the court's attention. The unpublished case that Mr. Yagman is trying to cite to this court is the Evans case that you asked him about. I find it ironic that he's criticizing us for doing what's legitimate under the rules when, in his brief, he's relying on us. We're kind of running far afield from what the main issue here is. Let me ask you a hypothetical. Suppose you have racketeers who try to shake down a business owner, a restaurant, for example, and torch the restaurant. Would the restaurant owner have a recall cause of action? If they torched his restaurant, without more facts, I'd say he could probably plead it. What about if a waiter in the restaurant is injured and loses employment? No. Why is that? How can we justify that result? You don't have the direct causation there. There's no direct causation? You don't have the direct causation. Someone's burning the fire at the restaurant. There's no direct causation? You don't mean that, do you? That he lost his job as a result of the fire? Yeah, he's injured in the fire and loses his employment or loses wages because of the fire. No, I don't think so. Why is that? It's too far removed. I think the case law is very clear on that. How can it be too far removed? He's injured in the same accident, the same incident that results in the closure of the restaurant. I think the case law that's been built in the Supreme Court is you have to have proximate cause and cause and fact. What could be more proximate than that? What are we missing there? The guy is injured in the fire in the restaurant. And there can be all kinds of residual consequences as a result of the fire of the restaurant. Somebody was ---- You're telling me his loss of his job is not proximately caused by the fire? Not in a RICO sense. No, I don't think so. What sense does that make? How can you ---- I mean, how do we justify that result? Well, I think he can obviously sue the people that caused the fire, but not under a RICO claim. Why? Because I think RICO is very limited by the Supreme Court to direct causation and proximate cause. You don't look at all the possible residual consequences that flow from the RICO allegation down the road. You've got to cut it off and look at who was the target of the RICO activity. The target was the restaurant. Where do you find the cases as you look at the target? I think that's ---- I'm not recalling names. I think it's the DEMA, the Supreme Court case that says you look at the direct target. The concern is under RICO, your ---- because you can get attorney's fees, because you can get the triple damages, we have to be very careful with this tool. It's a very potent tool. Debra, you're not telling me why, really, we're going to distinguish the restaurant owner from the restaurant employee. Well, because the racketeer obviously intended to harm the restauranteer's business. That's the relationship, the business relationship with the owner of the restaurant. Of course, there's going to be all kinds of residual financial consequences to other people, employees, maybe customers and so forth. But that's not what the racketeering conduct was focused on. I don't think the link is there. And much the same way in this case. I mean, of course Mr. Jagman can articulate there could ---- we can speculate there could be some kind of financial consequences to somebody if they're falsely arrested, if they're falsely imprisoned. But you don't start at the tail end and say, can you show there are some actual financial damages. You look at the nature of the injury. Is it because he said he lost employment instead of he lost a business? No, I don't think so. To set the record straight on that, too, all he's ever pled is, and in all of these cases it's possible loss of employment. There's no pleading he was actually employed. Right. We're not talking about that. Suppose he alleged that he was self-employed in a business. Would he have a RICO claim then? Same facts, same everything else, but he alleges he's self-employed. No, I don't think so. You have to look at the nature of the injury. These are basic personal injury claims. False arrest, possible loss of or damage to reputation, false imprisonment. Those are personal injury claims. It's why we use the personal injury statute of limitations. That's why we look to it in determining what the statute of limitations is. The basic nature of the injury is personal injury. The fact that there can be residual financial consequences as a result of that has not converted into a property loss. What if the Mater D is hired by the owner to run the floor, and he is an independent contractor, and he does all the managing of the floor, the restaurant, makes sure the doors are open, and when the restaurant is open, he's in charge. Now, he loses his job, and he makes a RICO claim. That's his business. He's a Mater D who runs the sub-operation, all these people, and he's working personally doing this. That's his job. Now, does he have a claim? I still don't think he does. Why not? That's his business. He's an employee of the business. No, he's an independent contractor. They hired him to run the show. When the doors open, he runs the show. He makes sure the tables are set. He makes sure the chefs are working, and he runs the show. He doesn't hire those people. He runs the show. No RICO claim. I don't think that changes the nature of the analysis. That's his business. That's his only business. That's all he does. It's his business. He's a hired consultant operator, manager. Is that different than someone that works for wages, the waiter that works for him on the tables? I don't think that RICO is assessing that in detail. Okay. Then how do we interpret that business provision in the RICO statute? How do we keep out of the troubles you're talking about, the people who have personal injuries? I assume that's what you're saying, should not be under RICO. So how do we do that? How do we draw those lines? Well, I think the NOW case is an example of what the court's talking about in terms of economic damage to business. There you have the pro-lifers are targeting the abortion clinic. They're discouraging the people from coming to the clinic. They're discouraging the doctors from doing their work. There was an allegation that they tried to induce the clinic administrator to quit her job. They're targeting. They're shutting down the clinic. They're shutting down the clinic, and that's the damage to property. In our case, in these cases, there's absolutely no allegation that LAPD is trying to harm property rights. Well, refresh my memory on NOW. Who sued for damages in the NOW case? Who is it? Who is the person that suffered the damages? Off the top of my head, I can't tell you. It wasn't the doctors? I don't think so, no. The clinic's not standing to bring their claim. It was the clinic. It was the business. Yeah, that's right. So you're saying that case says that anybody subbed the clinic, i.e., the doctors, the professionals that work in there, even though they are professionals, may even have a partnership agreement, they don't have a claim? I don't think so. I think it's the business. It's the business that's harmed. Well, let's assume, I mean, there's some language in some of the cases that indicate that people associated with a business, for RICO purposes, like the restaurant that Jed Silverman postulated, might have their own claim if they're employed there. But it seems to me that there's one step removed when the injury doesn't relate to that business. So let's change his example a little bit and say that one of the waiters is stopped by the police on the way to work and is beaten and arrested and hauled off to court. While he's doing, he's employed doing the same thing, the business he's employed at has nothing to do with his interaction with the police on that occasion. So he can't bootstrap himself from his employer's business as he could perhaps in the torching the restaurant example to an encounter on the street. Would that be a differentiating factor? Well, I think in that instance, it's somewhat like what we have here. The person who's stopped by the officer is complaining I was wrongfully stopped, I assume, and not hypothetical. It's a personal injury. He's saying, I'm going to suffer some financial consequences as a result of it, and it just so happens he was on his way to work. So you can see what that consequence is immediately. But the fact that he's going to have residual financial consequences doesn't convert it into a property damage claim. It's still a basic personal injury claim. You stopped me without probable cause. It's a civil rights personal injury allegation that may have residual financial consequences. Groban v. Platt, the case relied on an Oscar, is by far the most analogous case to this one. Those are the FBI agents' families suing for wrongful death at the hands of the criminals. And the court may say we've suffered financial consequences. Of course you have. You've lost your loved ones. There are financial consequences. But it's basically a wrongful death personal injury allegation. The fact that there are residual financial consequences does not convert it into a property damage claim. If he alleged that they planted dope in his car and his car was forfeited? No, not at all. Not at all. What, not at all? I said if he alleged. I thought you said did he allege. No, no. If he alleged that they planted dope in his car and his car was forfeited, would he have a RICO claim? Might come closer. I haven't thought that through. But you'd also have the problem I mentioned if let's take Judge Silverman's example one step back. And the owner of the restaurant is on the way to work. And he's stopped by the police. And all these bad things happen. As a result, he loses his restaurant from the stop. Not from the torching, but from the stop by the police because he can't go to work. And his maitre d' quits and all of a sudden he's got no business. I think what you're saying is that the stop by the police had nothing to do with his business of the restaurant. Correct. So in that case, you wouldn't have a RICO claim at that point. But the torching would because that's aimed at his business. Correct. Okay. However, if the police stopped him on his way to work because they want to ruin his business. In other words, they've been after him. They've been trying to shake down his business for a kickback and they couldn't get it. And you proved that that would be a RICO claim. I think you're much closer there. Yeah. Much closer there. The only other point I wanted to make, it comes out of Oscar as well, kind of on a secondary issue, is the speculative nature of the damages here. In Guerrero and in Diaz, there are very, very general allegations of loss of possible employment opportunities. There's not an allegation I was employed that this affected my job, that I tried to get jobs and couldn't get jobs. In Oscar, there's. He said he lost employment. He alleges he lost employment. But never alleges he was actually employed at all. I mean, if this is. Yeah, but this is Pro B-6 for unemployment. But I think Oscar is relevant on this point. There, when they're trying to make this kind of financial damage claim, they say, listen, you know, if I went to sublet this apartment, I wouldn't be able to sublet it at the market rate, and therefore I've suffered a financial consequence. That's how we get around the rental issue. And the court came back and said, wait a minute. It is a 12B-6 stage, but you need to allege some facts. You never alleged you could sublet. You never alleged you tried to sublet and couldn't sublet at market value. It's the exact same thing here. Even though we're at the 12B-6 stage, Mr. Yaglan was given every opportunity to amend here. And Diaz, he chose not to amend. He was given leave to amend. He came back and said, I've said enough. I don't have to say any more. I think before you sue some 200 individual city employees from all walks of city life, from city attorneys on through the police department, and claim they're violating RICO, you do have to say a little bit more. You do have to show that you have the standing to do this before we start discovery and so forth. And those allegations are incredibly general. They're absolutely speculative. They're the same allegation he's made in every one of his RICO complaints. And I think Oscar says you've got to do more than speculate that you may be sublet. You have to show how. Thank you. We'll give your opponent a little extra time, so we'll give you three minutes. Thank you, Your Honor. I don't think there's any principled way to distinguish between the owner of a business who actually owns a piece of property and an employee. The cases that are cited in support of the proposition about which Judge Brunet asked me are numerous, and they're cited on pages 24 and 25 of the brief. One of the cases is the Guerrero case. That's a published disposition when Judge Gray had this case before Judge Peace had it. I misspelled Judge Gray's name in the brief and made it Judge Reed, R-E-A-D, which is what happens when you're typing something late at night. The Guerrero case I think offers the best discussion of why an employee who loses employment is standing. Similarly, the Quinonez case, which is a Clayton Act case, but as this Court understands, RICO is to be interpreted in exactly the same way because it has the same words as the Clayton Act, on which it was modeled. I point out in passing that the Grogan case, which is directly contrary to the position I'm taking, it's the one involving the FBI agents, I think, in Georgia who were killed, I don't think is a decision that passes muster because it relies entirely, for the position taken in it, on the dissenting opinion in the Supreme Court's opinion in the Sedema case. And then the Ninth Circuit in Oscar picked up Grogan, which I don't think is good law because it relies on the dissent in Sedema. There are a number of other cases cited on pages 24 and 25, Hunt v. Weatherby, McNulty v. Borden, the Radovich case, which is the case from Judge Weinstein in the Eastern District of New York. These are all district court cases, basic out-of-circuit. And I noted those. I mean, they are persuasive because they're on your point, but they are out-of-circuit district court cases. Well, Grogan was out-of-circuit from the Eleventh Circuit, and this Court relied on it. Yeah. And it was based on a dissenting opinion in Sedema. Ultimately, this Court is going to do what it thinks is just and correct. Last point is this. The Evans case, for which there was criticism for the citation, properly was cited to this Court because no rules of this Court prohibit the citation of district court opinions to this Court from this circuit or any other circuit, as I understand this Court's rule. I'm getting off the point here, as Judge Silverman pointed out, prohibit only the citation of unpublished dispositions from this Court to this Court. Unless there are any questions, I will forfeit the 21 seconds I have left. All right. Thank you. Thank you very much. We'll take you back with gratitude. The case just argued will be submitted.
judges: Brunetti, Tg Nelson, Silverman